UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COPIA COMMUNICATIONS, LLC,

                Plaintiff,

v.

AMRESORTS, L.P. a Pennsylvania, limited Partnership and successor-in-interest to AM Resorts, LLC and SEAWIND KEY INVESTMENTS LIMITED, a Jamaican Corporation,

                Defendants.

CIVIL ACTION NO. 1:14-cv-13056-LTS

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SEAWIND KEY INVESTMENTS, LIMITED'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND/OR FOR FORUM NON CONVENIENS**

Brett D. Carroll (BBO No. 640569)
brett.carroll@hklaw.com
Courtney E. Gribbon (BBO No. 672548)
courtney.gribbon@hklaw.com
Holland & Knight, LLP
10 St. James Avenue, 11th Floor
Boston, MA 02116
Telephone: 617-523-2700
Fax: 617-523-6850

*Attorneys for Seawind Key Investments, Limited*

Date:  October 17, 2014

## TABLE OF CONTENTS

I.    STATEMENT OF RELEVANT FACTS ............................................................................1

   A.    THE PARTIES ..............................................................................................................1

   B.    THE CONTRACT BETWEEN THE PARTIES .........................................................3

   C.    PERFORMANCE OF THE CONTRACT .................................................................4

   D.    COPIA'S DEFICIENT ALLEGATIONS RELATING TO JURISDICTION ...................5

   E.    JAMAICA IS THE APPROPRIATE FORUM FOR THIS LITIGATION ...........................5

ARGUMENT ...............................................................................................................................6

II.   THE COMPLAINT SHOULD BE DISMISSED AGAINST SEAWIND FOR LACK
     OF PERSONAL JURISDICTION...........................................................................6

   A.    STANDARD OF REVIEW .............................................................................................6

   B.    THERE IS NO BASIS TO EXERCISE GENERAL JURISDICTION OVER SEAWIND. ......8

   C.    THERE IS NO BASIS TO EXERCISE SPECIFIC JURISDICTION OVER SEAWIND. .......9

      1.    Relatedness ................................................................................................9

      2.    Purposeful Availment ..............................................................................11

      3.    Reasonableness ........................................................................................13

III.  THE COMPLAINT AGAINST SEAWIND SHOULD BE DISMISSED UNDER
     THE DOCTRINE OF *FORUM NON CONVENIENS*. ........................................15

   A.    STANDARD OF REVIEW ...........................................................................................15

   B.    JAMAICA IS AN ADEQUATE ALTERNATIVE FORUM TO HEAR COPIA'S CLAIMS ..............15

   C.    PUBLIC AND PRIVATE FACTORS WEIGH IN FAVOR OF DISMISSAL ..................................16

      1.    Private Interest Factors Weigh Strongly in Favor of Dismissal ...............16

      2.    The Public Interest Factors Weigh Strongly in Favor of Dismissal .........18

CONCLUSION ...........................................................................................................................20

Defendant Seawind Key Investments, Limited ("Seawind") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Copia Communications, LLC's ("Copia") Complaint for lack of personal jurisdiction and/or on the basis of *forum non-conveniens*. As set forth below in greater detail, Copia's Complaint should be dismissed for lack of personal jurisdiction because: (a) Copia cannot demonstrate that Seawind, a Jamaican company, has the requisite "systemic and continuous" contacts necessary for an exercise of general jurisdiction over Seawind, and (b) Copia cannot satisfy the elements necessary for this Court to exercise specific jurisdiction over Seawind because Copia's claims do not arise out of Seawind's contacts with Massachusetts, Seawind has not purposefully availed itself to the privilege of conducting activities in Massachusetts and exercising personal jurisdiction over Seawind is not reasonable under the law. In addition, the Court should dismiss the Complaint against Seawind on *forum non conveniens* grounds because: (a) Jamaica is an adequate alternative forum, (b) Massachusetts is not an appropriate forum, and (c) the public and private factors weigh strongly in favor of dismissal.

## I.   STATEMENT OF RELEVANT FACTS

### A.   The Parties

Copia is a Massachusetts company which conducts the vast majority of its business in Jamaica. Compl. ¶ 4; *see generally* Affidavit of Courtney E. Gribbon, Esq. ("Gribbon Aff."). Since the early 2000's, Copia has provided wireless and internet services to companies, resorts and hotels in Jamaica. Affidavit of Michael McMorris ("McMorris Aff.") at ¶¶ 7-9. Indeed, Copia's website indicates that its founder, Darryl Wehmeyer, "moved to Jamaica in 2000" and in 2001, Copia" was founded in Kingston, Jamaica," and currently "serves a number of hotels across Jamaica." Gribbon Aff. at ¶ 4. Except for one resort in the Bahamas, all Copia clients are Jamaican hotels/resorts. Gribbon Aff. at ¶ 5. According to Copia's 2013

Annual Report, Copia provides "internet access, network installation, network monitoring and customer support to resorts and hotels in the Caribbean." Gribbon Aff. at ¶¶ 9-10. Copia's website confirms that it maintains a support office in Jamaica for its clients as well as a "local staff" in Jamaica. Gribbon Aff. at ¶ 6.

Copia operates through a sole officer/manager, Darryl Wehmeyer ("Wehmeyer"). Gribbon Aff. at ¶ 11. Wehmeyer worked extensively in Jamaica, on behalf of Copia, throughout the 2000's including, during times relevant to the business dealings between Copia and Seawind. McMorris Aff. at ¶¶ 7-9. Wehmeyer maintained a Jamaican cell phone and, upon information belief, a personal residence in Jamaica. McMorris Aff. at ¶ 13; Affidavit of Emilio Huhn ("Huhn Aff.") at ¶ 4. At all times relevant, Copia maintained numerous employees in Jamaica, including Philip McKenzie, General Manager, David Brown, Internet Engineer and LaToya Wilson, Customer Service Manager, and other employees known to provide "day-to-day" Copia support. Huhn Aff. at ¶¶ 5-6. Seawind is not aware that Copia had any employees, other than Wehmeyer, who live(d) in the Commonwealth. Huhn Aff. at ¶ 7.

Seawind is a Jamaican corporation, which owns two resort hotels in Montego Bay, Jamaica, Secrets St. James Montego Bay and Secrets Wild Orchid Montego Bay (collectively, the "Resorts"). Compl. ¶ 6; Affidavit of Salvador Luque ("Luque Aff.") at ¶¶ 4-5. Seawind has never been registered to do business in Massachusetts and has never had a registered agent in Massachusetts. Luque Aff. at ¶ 6. Relative to Massachusetts, Seawind has: (a) never had any offices, telephone numbers, mailing addresses and/or bank accounts, (b) never had any officers, directors, and/or employees work or, upon information and belief, reside there, (c) never owned

property or paid taxes, (d) never invested in any businesses, (e) no ongoing contracts, and (f)

never conducted any marketing or advertising nor solicited any business.  Luque Aff. at ¶¶ 7-12.[1]

### B.      The Contract Between the Parties

In April 2009, Copia commenced discussions with Seawind and AM Management

Jamaica Resorts Limited ("AM Jamaica")[2], the Resorts' manager, to provide internet and

wireless services at the Resorts, which were under construction.[3]  Compl. ¶ 10; Luque Aff. at ¶

19.  On or about April 21, 2009, Wehmeyer met with Pedro Morell and Manuel Carbajo (AM

Jamaica representatives) and Manuel Garcia (a Seawind employee) in Jamaica to negotiate the

terms of a contract for internet and wireless services (the "Contract").  Compl. ¶ 11-12; Affidavit

of Manuel Garcia ("Garcia Aff.") at ¶ 6.

Negotiations on the Contract continued in May and June 2009.  Compl. ¶ 13; Ex. A.  On

May 11, 2009, Wehmeyer sent to Morell a proforma quote ("May Proforma") confirming the

proposed price for the installation of equipment.  Compl., Ex. A.  Importantly, the May Proforma

is on Copia's letterhead with an address at "Gran Bahia Principe Business Center, Runaway Bay,

Jamaica, West Indies."  *Id.*[4]  From May through July 2009, the parties met several additional

---

[1] *See also* Luque Aff. at ¶ 14 (generally providing no contacts elsewhere in the United States).
[2] As discussed in greater detail in Defendant AMResorts, L.P.'s Memorandum of Reasons in Support of Its Motion to Dismiss, AM Jamaica, not AMResorts, L.P., operates the Resorts and employees performing functions on behalf of AM Jamaica are employed by AMR Resort Management, LLC.
[3] Copia has made, without basis in fact, insufficient and conclusory statements alleging that Seawind is an alter ego of AMResorts.  Compl. ¶¶ 13, 39.  In order to establish the alter ego doctrine, Copia must show that "businesses, although separately incorporated, have been operated in so imbricated a manner as to justify a reasonable perception that they are one and same."  *See United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1095-96 (1st Cir. 1992) (citing *Westcott Constr. Corp. v. Cumberland Constr. Corp.*, 3 Mass. App. Ct. 294 (1975)).  Copia has failed to meet this standard as it clearly recognizes that there were two distinct companies involved in the negotiation and performance of the Contract.  *See e. g.* Compl. ¶ 11 & Ex. H.  Seawind and AMResorts (and any of its affiliated companies) are entirely separate entities, with separate boards of directors, and separate books and records.  As a result, this Court cannot impute any of AMResorts' unique jurisdictional facts, if any, to Seawind.  *See also* Defendant AMResorts, L.P.'s Memorandum of Reasons in Support of Its Motion to Dismiss.
[4] In July 2009, Copia sent additional proforma invoices to Seawind for installation costs on Copia letterhead with, once again, a Copia address at "Gran Bahia Principe Business Center, Runaway Bay, Jamaica, West Indies."  Garcia Aff. at ¶ 12.

times in Jamaica, including a meeting between Wehmeyer and Garcia in June 2009, to negotiate the Contract.  Compl. Ex. D; Garcia Aff. at ¶ 7.

Ultimately, Seawind and Copia memorialized the terms of the Contract through a written agreement dated June 29, 2009, first drafted by Copia.  Compl. ¶ 13, 17, Exhibit E & F; Luque Aff. at ¶ 25.  Wehmeyer, on behalf of Copia, executed the Contract at Seawind's office in Jamaica.  Compl. Ex. F; Garcia Aff. at ¶ 9.  Under Contract, the parties expressly agreed that it "shall be governed by and construed in all aspects in accordance with the laws of Jamaica, W.I.." Compl. Ex. E at § 17.0.  Further, the parties expressly agreed that they submitted to "the non-exclusive jurisdiction of the Courts of Jamaica, W.I."  Compl. Ex. E at § 17.0.

At no point during the Contract negotiations did any Seawind representatives travel to Massachusetts.  Luque Aff. at ¶ 27.  All communications from Seawind representatives originated from outside of Massachusetts.  Luque Aff. at ¶ 28.  Further, at all times relevant, Seawind understood that Copia would: (a) install equipment in Jamaica, (b) provide service and otherwise perform in Jamaica, and (c) provide on-site service employees at the Resorts. McMorris Aff. at ¶ 18; Huhn Aff. at ¶¶ 8-12.

## C.    Performance of the Contract

Between July 2009 and March 2010, Copia worked to install wireless and internet services for the Resorts in Jamaica, utilizing Copia employees in Jamaica to conduct the installation work.  Compl. ¶¶ 23-26; Garcia Aff. at ¶¶ 13-16.  Copia representatives, including, but not limited to, Wehmeyer and McKenzie, met frequently with Seawind and AM Jamaica representatives at the Resorts to address installation and service.  Garcia Aff. at ¶ 16.  No meetings ever took place in Massachusetts.  Garcia Aff. at ¶ 17.

By April 1, 2010, the Resorts were open for business.  Compl. ¶ 27.  Copia provided wireless and internet services for the Resorts until the termination of the Contract in April 2014.

4

Compl. ¶ 29.  Throughout its performance, Copia staffed the Resorts daily with, at least, two, if not, three Copia employees at the Resorts' Business Center.  Huhn Aff. at ¶ 10.  Indeed, Copia advertised to the public that it had "technicians [at the Resorts] seven days a week in order to assist [guests] in connecting to the internet."  Garcia Aff. at ¶¶ 18-19.  Copia performed all service in Jamaica not Massachusetts.  Huhn Aff. at ¶¶ 8-9.

From 2010 to 2014, several meetings took place in Jamaica with Copia employees, including Wehmeyer, who traveled frequently to Jamaica, to discuss wireless and internet service issues.  Huhn Aff. at ¶ 11.  During the performance of the Contract, Copia's email communications referenced Copia's office in Jamaica, as well as Jamaican cell phone numbers for its employees, including Wehmeyer.  Huhn Aff. at ¶ 12.  All communications from Seawind representatives regarding Copia's performance under the Contract originated from outside of Massachusetts, and mostly, from Jamaica.  Luque Aff. at ¶ 28; Huhn Aff. at ¶ 14.

### D. Copia's Deficient Allegations Relating to Jurisdiction

Copia's sole jurisdictional allegations in the Complaint merely state:  (1) Seawind "entered into a contract in the Commonwealth of Massachusetts, purchased goods and services in Massachusetts, and transacted business within the Commonwealth;" (2) Seawind markets and advertises the Resorts in the Commonwealth and conducts tourism business with Massachusetts resident and (3) Seawind "communicated with and ordered telecommunications from [Copia] in Massachusetts, which was thereafter shipped from the Commonwealth."  Compl. ¶ 7.

### E. Jamaica is the Appropriate Forum for this Litigation

Jamaica maintains a fully developed court system, derived from English common law, which frequently hears contract disputes between business entities and provide for relief, both monetary and non-monetary, depending on the issue.  Affidavit of M. Angela Robertson ("Robertson Aff.") at ¶ 6.  Jamaican courts recognize similar causes of action as alleged in

Copia's Complaint.  Robertson Aff. at ¶ 7.  Jamaican dockets are not overwhelmed such that relief is not available to a plaintiff.  Robertson Aff. at ¶ 8.  In fact, there is a specialized commercial court that allows for even speedier resolution of disputes of this nature.  Robertson Aff. at ¶ 8.  Further, Jamaican courts fully understand the law—Jamaican law—which applies to the dispute between the parties.  Robertson Aff. at ¶ 9.

No Seawind employees involved in the Contract negotiations, Contract execution, and/or relationship with Copia live in the United States.  Luque Aff. at ¶ 36.  Several employees reside in Jamaica.  McMorris Aff. at ¶ 4; Huhn Aff. at ¶¶ 2-3.  Further, upon information and belief, no AM Jamaica employees or representatives involved in the Contract negotiations, Contract execution, and/or relationship with Copia live in the United States.  Equally, upon information and belief, other witnesses relevant to the dispute, as identified in the documents attached to Copia's Complaint including, but not limited to, Pedro Morell and Manuel Carbajo, reside outside of the United States.  Relevant Copia witnesses, including, but not limited to, Philip McKenzie, David Brown and LaToya Wilson, reside in Jamaica.  Huhn Aff. at ¶¶ 5-6.  All relevant documents associated with the Contract negotiations, Contract execution, and/or relationship with Copia, are maintained either on-site at the Resorts, or via servers maintained in Jamaica or outside of the United States.  Luque Aff. at ¶ 37; Huhn Aff. at ¶ 15.

## ARGUMENT

## II.   THE COMPLAINT SHOULD BE DISMISSED AGAINST SEAWIND FOR LACK OF PERSONAL JURISDICTION.

### A.   Standard of Review

Under Fed. R. Civ. P. 12(b)(2), Copia bears the burden of establishing that this Court has personal jurisdiction over Seawind.  *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002).  Copia has not sustained this burden.

Copia must demonstrate that personal jurisdiction is appropriate under the Massachusetts Long-Arm Statute and that the exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *See Pleasant St.*, 960 F.2d at 1086. "Because courts construe 'the Massachusetts long-arm statute as being coextensive with the limits permitted by the Constitution,' this Court may 'turn directly to the constitutional test'" to determine personal jurisdiction. *C.W. Downer & Co. v. Bioriginal Food & Science Corp.*, C.A. No. 13-11788, 2014 WL 815189, *2 (D. Mass. March 3, 2014) (quoting *Adelson v. Hananel*, 652 F.3d 75, 80 (1st Cir. 2011)).

The Due Process Clause of the Fourteenth Amendment establishes the crucial outer boundaries of a forum state's authority to proceed against a defendant. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (citing *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977)). "The canonical opinion in this area remains *International Shoe* [*v. Washington* ], 326 U.S. 310, [(1945)], in which [the Supreme Court] held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 2853.

The Court will inquire "whether [Copia] has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008). To sustain this substantial burden, Copia "must go beyond the pleadings and make affirmative proof." *Pettingill v. Curtis*, 548 F.Supp. 2d 348, 257 (D. Mass. 2008). As neither the allegations of the Complaint nor the actual facts involved sustain a finding of personal jurisdiction, Copia's claims against Seawind must be dismissed.

**B.      There is no basis to exercise general jurisdiction over Seawind.**

Exercising general jurisdiction over a corporation is not permissible unless there exist "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear,* 131 S. Ct. at 2853.  Because general jurisdiction is not related to the actual events giving rise to a cause of action, courts impose a stringent minimum contacts test such that Copia must establish that Seawind's contacts are so "continuous and systematic as to render [Seawind] essentially at home [in Massachusetts]. *See id*. at 2856-57.  Earlier this year, the Supreme Court substantially increased Copia's burden in establishing general jurisdiction in *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014), holding that in all but the "exceptional case," a corporate defendant is "at home" and thus subject to general jurisdiction, *only* in its formal place of incorporation or principal place of business.  *Id*. at 760-761 & n.19.  Copia cannot satisfy this exacting standard because it is undisputed that Seawind's place of incorporation and principal place of business are Jamaica, not Massachusetts.  Compl. ¶6.  Accordingly, the inquiry on general jurisdiction should end pursuant to *Daimler. See id*. at 760-761 & n.19.

In addition, Copia's wholly conclusory and extremely limited allegations in its Complaint regarding jurisdiction hardly establish the "exceptional case" standard required under *Daimler*. Compl. ¶ 7.  As outlined in detail *supra*, the parties entered into the Contract in Jamaica, not Massachusetts, and the facts do not demonstrate that Seawind received goods or services in Massachusetts and/or transacted business in Massachusetts.  Seawind does not conduct any marketing or advertising in Massachusetts or any "tourism business" with any Massachusetts residents.  In addition, Seawind has no real property, bank accounts or offices in Massachusetts, and it is not registered to do business in Massachusetts nor does it pay taxes in Massachusetts. Accordingly, where Seawind has no connection to Massachusetts, much less a substantial

connection, Copia simply cannot establish an "exceptional circumstance." This is especially true where general jurisdiction was not found in *Daimler*, even though the defendants there engaged in far more meaningful and/or significant activities in the forum state than Seawind. *See id*. at 760-761 & n.19 (general jurisdiction over a German-based company not found despite the existence of a U.S.-based subsidiary which conducted business in the forum state).[5]

### C. There is no basis to exercise specific jurisdiction over Seawind.

To establish minimum contacts sufficient to satisfy specific jurisdiction, "the constitutional analysis is divided into three categories: relatedness, purposeful availment and reasonableness." *Phillips*, 530 F.3d at 27. Copia must, but cannot, establish that, first, the underlying claim "directly arise[s] out of or relate[s] to, the defendant's forum state activities," second, Seawind's contacts with the forum state "must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable," and third, the exercise of jurisdiction must be reasonable under the "*Gestalt*" factors. *Id*. (internal citations omitted).

### 1. Relatedness

In order for a cause of action to arise directly out of or relate to a defendant's forum-based contacts, "there must be more than just an attenuated connection between the contacts and the claim. *Id*. In fact, "the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case." *Id*.

---

[5] *See also Fed. Home Loan Bank of Boston v. Ally Fin., Inc.*, C.A. No. 11-10952 (D. Mass. Sept. 30, 2014) (no general jurisdiction over defendants who had "significant 'continuous and systematic' contacts with Massachusetts, including corporate activities in Massachusetts generating significant revenue" where defendants were not incorporated, nor did they have their principal places of business in Massachusetts).

All of Copia's claims against Seawind, including its alleged tort claims, arise out of the

Contract and Seawind's alleged breach of that agreement.[6]  A contract, on its own, however,

does not automatically establish minimum contacts with the forum state.  *See United States v.*

*Swiss Am. Bank, Ltd.*, 274 F.3d 610, 621 (1st Cir. 2001) (citing *Burger King Corp. v.*

*Rudzekwicz*, 471 U.S. 462, 479 (1985)).  In *Burger King*, the Supreme Court established a

"contract-plus analysis," which requires the evaluation of "prior negotiations and contemplated

future consequences, along with  . . . the parties' actual course of dealing" to determine whether

the defendant has sufficient minimum contacts with the forum state.  *Burger King*, 471 U.S. at

479.  The Court should also consider "whether the defendant's activity in the forum state was

instrumental to either the formation of the contract or its breach."  *Phillips*, 530 F.3d at 27

(internal citations omitted).  Moreover, the location of contract negotiations is "vitally important

to the jurisdictional inquiry . . . [i]f the negotiations occurred outside of the forum state, their

existence cannot serve to bolster the argument for the assertion of jurisdiction in the forum."

*Pleasant St.*, 960 F.2d at 1090 (finding no jurisdiction).

Under this standard, Copia's claims simply do not "arise out of" Seawind's contacts with

Massachusetts.  Seawind never reached into Massachusetts to solicit business from Copia, all in-

person meetings took place in Jamaica, the Contract was executed in Jamaica and the

performance of the Contract took place in Jamaica .  Compl. ¶ 12; Luque Aff. at ¶¶ 23, 31-33;

Garcia Aff. at ¶¶ 6-9, 16; Huhn Aff. at ¶¶ 8-12.  The parties even agreed to a choice of law and

forum selection clause in the Contract whereby Jamaica law would govern any future disputes

and jurisdiction in Jamaica was agreed upon.  Compl. Ex. E at § 17.0.  Indeed, Seawind's only

"contact" with Massachusetts was that it entered into a contract with a Massachusetts company

---

[6] When contract and tort claims are sufficiently connected, as is the case here, the standard for relatedness in
considering the claims is the same.  *See Phillips*, 530 F.3d at 27.

(which arguably conducts no business in Massachusetts) and, at times, potentially spoke to Wehmeyer while he was in Massachusetts.  But, such contact is wholly insufficient to establish that Copia's claims are related to Massachusetts.  *See Phillips*, 530 F.3d at 27*; see also Adams v. Adams*, 601 F.3d 1, 6 (1st Cir. 2010) (telephone calls with plaintiff in Massachusetts to negotiate terms of promissory note drafted in Massachusetts but executed in Texas were insufficient to establish forum related contacts).[7]  Copia has, therefore, failed to demonstrate that its claims are related to Seawind's contacts with Massachusetts.

## 2.   Purposeful Availment

The second prong of the specific jurisdiction inquiry "is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts."  *Swiss American*, 274 F.3d at 624; *see also Phillips*, 530 F.3d at 28 (defendant's contacts must also be foreseeable).  Voluntariness requires that the defendant's contacts "proximately result from actions by the defendant himself," and the contacts must be "deliberate and not based on the unilateral actions of another party."  *Id.* (citing *Burger King*, 471 U.S. at 475).  To the extent Seawind's alleged contacts with Massachusetts were in response to Copia-initiated communications, such contacts do not support personal jurisdiction.  *See Brabner v. Chow*, C.A. No. 13-10324, 2014 WL 1404702, *9 (D. Mass. Apr. 9, 2014).

"Foreseeability requires that the contacts also must be of a nature that the defendant could 'reasonably anticipate being haled into court there.'"  *Phillips*, 530 F.3d at 28 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980)).  As such, Seawind's mere

---

[7] *See also Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132* F.3d 111, 113 (1st Cir. 1997) (finding no specific jurisdiction where core contractual responsibilities, including inspection of merchandise, had to be performed abroad); *C.W. Downer & Co.*, 2014 WL 815189 at *3 (where defendant's alleged failure to transfer funds to Massachusetts took place in Canada, personal jurisdiction in Massachusetts did not lie).

awareness of Copia's presence Massachusetts is not sufficient to establish personal jurisdiction. *See id.* (mailing a contract to Massachusetts for signature and following up with three e-mails concerning the logistics of contract signing was insufficient to establish foreseeability). Absent Seawind traveling to Massachusetts concerning the Contract negotiations, which never happened, inter-party communications "by phone or mail are insufficient to demonstrate purposeful availment." *See C.W. Downer & Co.*, 2014 WL 815189 at *4; *see also Adams*, 601 F.3d at 8, n.11 (1st Cir. 2010) (Texas defendant did not purposefully avail himself to jurisdiction in Massachusetts when note was negotiated over the phone and plaintiff *might* have been in Massachusetts); *R&B Splicer Sys., Inc. v. Woodland Indus., Inc.*, C.A. No. 12-11081, 2013 WL 1222410, *1 (D. Mass. March 26, 2013) (defendant did not purposefully avail himself to Massachusetts jurisdiction when contract was sent to defendant in Georgia, defendant never visited Massachusetts, all meetings took place in Georgia, and only business in Massachusetts was delivery of payment for purchase of equipment).

The facts simply do not support a finding of purposeful availment in Massachusetts. Copia sent the Contract to Seawind and AM Jamaica in Jamaica to review during the negotiations. Luque Aff. at ¶ 24. As discussed *supra*, no Seawind representatives traveled to Massachusetts to negotiate the Contract or during the performance of the Contract, all meetings were held in Jamaica and the Contract was executed by both Copia and Seawind in Jamaica. Compl. Ex. F; Luque Aff. at ¶¶ 26-28, 31-34; Garcia Aff. at ¶¶ 6-9, 13-16; McMorris Aff. at ¶¶ 14-17. Further, Copia's wholly conclusory allegations that Seawind communicated with and ordered equipment from Massachusetts, even if true, are not sufficient to establish jurisdiction. *See Adams*, 601 F.3d at 8 n.11; *R&B Splicer Sys., Inc.*, 2013 WL 1222410, at *1. In addition, making payments to a Massachusetts resident under a contract is not sufficient evidence to

indicate that the defendant should have foreseen being haled into a Massachusetts court. *See C.W. Downer & Co.*, 2014 WL 815189 at *4.[8]  As such, if Copa now argues that Seawind made payments under the Contract to Copia in Massachusetts, such acts do not establish jurisdiction.

Finally, the parties' agreement to a Jamaican choice of law provision and forum selection clause in the Contract is compelling, if not wholly persuasive, evidence that Seawind could not foresee jurisdiction in Massachusetts. *See BCCTC Assocs. v. Summerdale/AAHFI, L.P.*, 656 F.Supp. 2d 208, 217 (D. Mass. 2009) ("parties' agreement to Georgia law runs against the conclusion that defendants purposefully availed themselves to Massachusetts law."); *C.W. Downer & Co.*, 2014 WL 815189 at *8 (Canadian choice of law provision weighed against reasonableness of exercising personal jurisdiction over defendants).[9]

### 3.    Reasonableness

Because Copia cannot establish the first two first prongs of the specific jurisdiction test, the Court need not apply the *Gestalt* factors and, instead, can simply confirm that jurisdiction is lacking. *See e.g. Pleasant St.*, 960 F.2d at 1091 n.11.[10]  Even if the Court's analysis proceeds, the *Gestalt* factors weigh strongly in favor of dismissal especially since Copia's showing on prongs one and two is wholly lacking. *See Harlow v. Children's Hosp.*, 432 F.3d 50, 67 (1st Cir. 2005) (the reasonable analysis "evokes a sliding scale," where "the weaker the plaintiff's

---

[8] *See also Moelis v. Berkshire Life Ins. Co.*, 451 Mass. 483, 488 (2008) (purchasing insurance policy from Massachusetts insurer and mailing premium payments to Massachusetts was not sufficient to establish personal jurisdiction); *Automatic Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 445-46 (1972) (finding no personal jurisdiction over New York defendant that signed purchase order to buy goods from Massachusetts seller, mailed purchase order to Massachusetts, received invoice from Massachusetts and sent check to Massachusetts).
[9] Even assuming the equipment installed by Copia was shipped from Massachusetts, which, has only been asserted by Copia with the most conclusory allegations possible, Seawind, again, could not have foreseen being haled into a Massachusetts court because: (a) the installation, replacement and/or service of equipment was to occur in Jamaica, (b) all Copia personnel involved in installation and service, with the exception of Wehmeyer, worked full-time in Jamaica, and (c) importantly, Seawind never contracted to have equipment manufactured or assembled in Massachusetts.  Garcia Aff. at ¶¶ 13-22; Huhn Aff. at ¶¶ 8-12.
[10] The *Gestalt* factors include: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Pleasant St.*, 960 F.2d at 1088 (citing *Burger King*, 471 U.S. at 477)

showing on the first two prongs . . . the less a defendant need show in terms of unreasonableness to defeat jurisdiction." ).

Litigating in Massachusetts would impose a substantial burden on Seawind as none of its witnesses are located in Massachusetts, nor are any witnesses from AM Jamaica.  Luque Aff. at ¶¶ 8-15.  Equally, certain key third-party witnesses cannot be compelled to Massachusetts to testify as they are beyond the subpoena power of this Court.  *See R&B Splicer Sys.*, 2013 WL 1222410 at *1 (*Gestalt* factors weighed in favor of dismissal where only connection to Massachusetts was payment to plaintiff in Massachusetts and where all witnesses were in Georgia and court's subpoena power could not compel non-party witnesses from Georgia).  Moreover, Jamaica has a far greater interest in the resolution of this dispute than Massachusetts.  Seawind is a Jamaican company with no ties to Massachusetts, the parties' dispute is governed by Jamaica law and relates to the performance of a contract at Jamaican resorts and Copia itself conducts the substantial majority of its business in Jamaica.  Since events leading up to or causing Copia's alleged injury all occurred in Jamaica, Massachusetts has no interest in determining the outcome.  *See Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995) (holding that fact that acts comprising defendants' alleged negligence occurred outside forum cut against jurisdiction).  Finally the *Gestalt* factors substantially weigh in favor dismissal since the parties consented to jurisdiction in Jamaica.  Compl. Ex. E at § 17.0.[11]  As Copia cannot, as a matter of fact or law, establish that jurisdiction exists over Seawind, dismissal of Copia's claims against Seawind is appropriate.

---

[11] The undisputed fact that Seawind is a foreign corporation further supports a lack of a reasonableness finding.  *See Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 114 (1987) (finding that "[t]he unique burdens" of a foreign defendant "should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

### III. THE COMPLAINT AGAINST SEAWIND SHOULD BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*.

#### A. Standard of Review

The doctrine of *forum non conveniens* equally warrants dismissal. *Forum non conveniens* permits dismissal where a fair, alternate forum is available which is substantially more convenient to the parties or the courts. *See Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1349 (1st Cir. 1992). A district court will enforce its authority to grant a motion to dismiss for *forum non conveniens* where, as in the instant action, evidence is presented which confirms that (1) an adequate alternative forum exists—here Jamaica, and (2) the considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum. *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000). While Copia will contend that a certain amount of deference should be applied to its choice of forum, the law is clear that "there is no automatic right to the presumption." *Interface Partners Int'l Ltd. v. Hananel* ("*Interface Partners*"), 575 F.3d 97, 101 (1st Cir. 2009).

#### B. Jamaica Is An Adequate Alternative Forum to Hear Copia's Claims

Copia has no reasonable basis to dispute that Jamaica is an adequate alternative forum. Seawind and AM Jamaica, both Jamaican companies, are amenable to service of process in Jamaica, and other necessary witnesses are subject to the exclusive jurisdiction of the Jamaica courts. Robertson Aff. at ¶ 10. Jamaican courts are experienced in the types of claims alleged by Copia. Robertson Aff. at ¶¶ 6-7. Further, Jamaican laws provide for both monetary and non-monetary damages to compensate Copia in the event it is successful in its claims. Robertson Aff. at ¶ 6. There are no political or legal obstacles to Copia in asserting its claims in Jamaica, and there is no bias against Americans in Jamaican courts. Robertson Aff. at ¶ 13.

In addition, federal courts have found already that Jamaica is an adequate alternative forum.  *See e.g. Seales v. Panamanian Aviation Corp.*, 356 Fed. Appx. 461, 464, 2009 WL 4730428, *2 (2nd Cir. 2009) (noting that "availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum, nor identical remedies," and holding that Jamaica is an adequate alternative forum); *see also Guimond v. Wyndham Hotels & Resorts*, No. 95 Civ. 0428, 1996 WL 281959, *2 (S.D.N.Y. May 29, 1996). Accordingly, Jamaica is an adequate alternative forum for this matter.  *See Iragorri*, 203 F.3d at 12 (citing *Piper Aircraft Co.*, 454 U.S. at 257) (first prong of non conveniens analysis met "if the defendant demonstrates that the alternative forum addresses the types of claims that the plaintiff has brought and that the defendant is amenable to service of process there.").

### C.      Public And Private Factors Weigh In Favor of Dismissal

The evidence equally confirms that dismissal is appropriate since the public and private factors weigh strongly in favor of litigating in Jamaica.  *See Iragorri,* 203 F.3d at 12.

### 1.       Private Interest Factors Weigh Strongly in Favor of Dismissal[12]

With respect the ease of access to sources of proof, many of Seawind's material witnesses, including for example, Emilio Huhn, manager at the Resorts during the performance of the Contract and who sent the termination letter to Copia, and the vast majority of documentary evidence are located in Jamaica.  Huhn Aff. at ¶¶ 1-2, 15; Luque Aff. at ¶ 37. Several key Copia witnesses, including Philip McKenzie, David Brown and LaToya Wilson, reside in Jamaica.  Huhn Aff. at ¶¶ 5-6.  Wehmeyer is in Jamaica frequently and, at least for some period of time, maintained a residence there.  McMorris Aff. at ¶ 13; Huhn Aff. at ¶ 4.

---

[12] Private interest factors include:  the relative ease of access to sources of proof; the availability of compulsory process for attendance of the unwilling and the cost of obtaining attendance of willing witnesses; and the possibility for view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.  *See id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

Given that Copia consistently maintained an office in Jamaica, it is likely that key Copia materials relative to the dispute between the parties are located in Jamaica. Compl., Ex. A. As such, the burden on Copia of litigating this matter in Jamaica is slight, as opposed to the substantial burden for Seawind to litigate in Massachusetts. In addition, the negotiations of the Contract, the execution of the Contract and the performance of the Contract (including installation and ongoing service) all took place in Jamaica. McMorris Aff. at ¶¶ 16-18 ; Garcia Aff. at ¶¶ 6-9, 13-16; Huhn Aff. at ¶¶ 8-12. Equally, the events relating to Seawind's alleged breach of Contract and other alleged misconduct took place in Jamaica. Compl. ¶¶ 29, 35, 37. Moreover, while Copia is a Massachusetts company, its entire purpose for existence is to provide services in the Caribbean. Gribbon Aff. at ¶¶ 9-10.

On balance, the conveniences of the parties and relative ease of access to proof strongly favor Jamaica as the appropriate forum for this dispute. *See Interface Partners*, 575 F3.d at 104-105 (where contract terms negotiated in Israel, performance of contract in Israel, alleged breaches took place in Israel, key witnesses were located in Israel and relevant documents were in Israel, factors weighed in favor of Israeli forum); *see also Howe v. Goldcorp. Invest., Ltd.*, 946 F.2d 944, 951 (1st Cir. 1991) (holding that the balance of conveniences favor defendants seeking a Canadian forum because "[t]he relevant events surrounding both plaintiff's misrepresentation and breach of fiduciary duty claims took place in Canada, not the United States."). Here, the facts are even more compelling than in *Interface Partners*, as not only was the contract negotiated and performed in Jamaica, it was actually executed in Jamaica. Garcia Aff. at ¶ 9.

Further, the fact compulsory process of several key witnesses is either problematic and very costly, or altogether impossible, weighs in favor of dismissal. Neither Copia nor Seawind can compel Jamaican-based witnesses to Massachusetts for trial. Robertson Aff. at ¶16. Even

with willing witnesses, the costs associated with litigating this matter in Jamaica are substantially lower for all parties, including Copia.  As the vast majority potential witnesses are subject to the Jamaican courts' jurisdiction and would not incur the cost associated with traveling out of the country.  Finally, to the extent the parties wish to take depositions of Jamaican-based witnesses, the process for conducting depositions in Jamaica in connection with foreign matters is extremely cumbersome, time-consuming and costly, in particular because Jamaica is not a signatory to the Hague Convention on Taking Evidence Abroad for Civil or Commercial Affairs.  Robertson Aff. at ¶¶ 14-15.  Numerous federal courts consistently have held that the ability to produce live testimony can weigh strongly in favor of a particular forum.  *See Interface Partners*, 575 F.3d at 105; *Irragori*, 203 F.3d at 15; *Howe*, 946 F.2d at 952.  As such, to the extent witnesses are located in Jamaica and subject to the jurisdiction of the Jamaican courts, it is only logical that this matter be litigated in Jamaica.  In sum, the balance of private interest factors confirm that Jamaica is a far more convenient and efficient forum than Massachusetts.

## 2. The Public Interest Factors Weigh Strongly in Favor of Dismissal[13]

When considering the public interest factors, Courts routinely give weight to the substantive law to be applied, particularly where the substantive law to be applied is foreign. *See, e.g., Interface Partners*, 575 F.3d at 106 (holding that district court did not abuse its discretion in considering the application of Israeli law to the parties' dispute as weighing in favor of dismissal on forum non conveniens grounds).[14]  In addition, "[a] mutual forum selection

---

[13] Public interest factors include: the administrative difficulties of docket congestion; the general goal of having localized controversies decided at home; ease of access to the proceedings on the part of interested citizens; the trier's relative familiarity with the appropriate rules of decision; avoidance of unnecessary problems in conflicts of laws; and the burdens of jury duty.  *See Iragorri*, 203 F.3d at 12.

[14] *See also Howe*, 946 F.2d at 953 (1st Cir. 1991) ("[A]t least some significant portion of the adjudication of [the defendant's] case will involve tasks most easily and appropriately handled by a Canadian court: interpreting primarily Canadian law and applying it to matters principally of concern to Canada and Canadians"); *LTX Corp. v. Daewoo Corp.,* 979 F. Supp. 51, 60 (D. Mass. 1997) (weighing, as part of its analysis, that "[a]t this point, it appears

clause is a factor to be considered in the *forum non conveniens* analysis." *Mercier*, 981 F.2d at

1358 (holding that district court did not assign excessive weight to forum selection when

dismissing case). Here, the choice of law and forum selection clause reflects the parties'

intention and expectation that any disputes under the Contract would be resolved in Jamaica,

under the application of Jamaican law.

      While the law considers the public interest in providing a convenient American forum for

an action involving American citizens, the trial court should equally consider "the attenuated

connection between the particular United States forum and the matter in litigation." *Mercier,*

981 F.2d at 1355 (dismissal on lack of jurisdiction is appropriate given the attenuated connection

between the parties' dispute and Massachusetts). Here, apart from the fact that Copia is

registered as a Massachusetts company, there is no connection between the matter pending

before this Court and Massachusetts. Moreover, unlike Massachusetts, Jamaica has a compelling

interest in determining this matter since Seawind is a registered Jamaican company, Copia

conducts the vast majority of its business in Jamaica, the Contract relates to services provided at

a Jamaican resort and any alleged breaches or other misconduct took place in Jamaica. Huhn

Aff. at ¶¶ 4-12; Gribbon Aff. at ¶¶ 5, 9-10.

      Finally, given the parties' agreement to have any disputes determined under Jamaican

law, their consent to jurisdiction in Jamaica and where it is clear that key witnesses and

documents are located in Jamaica and all relevant actions and alleged injuries occurred in

Jamaica, it unnecessary to burden a Massachusetts court and a jury comprised of Massachusetts

citizens with this case. *See Royal Bed and Spring Co. v. Fammosul Industria e Comercio de*

*Movei Ltda.*, 906 F.3d 45, 52 (1st Cir. 1990) (quoting *Gulf Oil*, 330 U.S. at 508, "Jury duty is a

---

likely that Korean law will govern the contract issues" and finding that Korea would be a more appropriate forum
than Massachusetts).

burden that ought not to be imposed upon the people of a community which has no relation to the litigation . . . there is a local interest in having localized controversies decided at home."). Valuable resources of this Court's already congested docket are not benefited, nor are public interests served, by an action intended to be resolved in Jamaica with no reasonable connection to Massachusetts.  *See id*.

Accordingly, as there is no dispute that Jamaica is an adequate forum, and because the public and private factors weigh strongly in favor Jamaica, the Court should dismiss Copia's claims against Seawind on *forum non conveniens* grounds.

## CONCLUSION

For the reasons discussed above, Plaintiff's Complaint against Seawind Key Investments Limited should be dismissed.

Dated:  October 17, 2014

Respectfully submitted,

SEAWIND KEY INVESTMENTS, LIMITED

by its attorneys,

*/s/ Brett D. Carroll*
Brett D. Carroll (BBO No. 640569)
brett.carroll@hklaw.com
Courtney E. Gribbon (BBO No. 672548)
courtney.gribbon@hklaw.com
Holland & Knight, LLP
10 St. James Avenue, 11th Floor
Boston, MA 02116
Telephone: 617-523-2700

## CERTIFICATE OF SERVICE

I hereby certify this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants as of October 17, 2014.

*/s/ Brett D. Carroll*
Brett D. Carroll

20

#32750157_v5