UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COPIA COMMUNICATIONS, LLC,

        Plaintiff,

v.

AMRESORTS, L.P. a Pennsylvania, limited
Partnership and successor-in-interest to AM
Resorts, LLC and SEAWIND KEY
INVESTMENTS LIMITED, a Jamaican
Corporation,

        Defendants.



CIVIL ACTION NO. 1:14-cv-13056-LTS

### AFFIDAVIT OF SALVADOR LUQUE GARCIA

I, Salvador Luque Garcia, hereby declare as follows:

1.      I am the Chairman of Seawind Key Investments, Limited ("Seawind") and have held this position since 2014.  My previous title was Project Manager.

2.      I work and reside in Spain.

3.      I have personal knowledge of the facts set forth below.

4.      Seawind is a Jamaican corporation with offices in Montego Bay and Kingston, Jamaica.

5.      Seawind owns two resort hotels in Montego Bay, Jamaica, Secrets St. James Montego Bay and Secrets Wild Orchid Montego Bay (collectively, the "Resorts").

6.      Seawind has never been registered to do business in Massachusetts and has never had a registered agent in Massachusetts.

7.      Seawind has never had any offices, telephone numbers, mailing addresses and/or bank accounts in Massachusetts.

8.      Seawind has never had any officers, directors, and/or employees work in Massachusetts or reside in Massachusetts during the course and scope of their relationship with Seawind.

9.      Seawind has never owned property or paid taxes in Massachusetts.

10.     Seawind has never invested in any businesses in Massachusetts.

11.     Seawind has never conducted any marketing or advertising in Massachusetts, nor solicited any business in Massachusetts.

12.     Seawind has never instituted litigation in Massachusetts.

13.     Equally, relative to any other state in the United States, Seawind has not: (a) owned any property, (b) registered to do business, (c) maintained a registered agent, (d) maintained an office, (e) maintained a bank account, (f) maintained employees, (g) paid taxes, (h) invested in any business, (i) solicited any business or (j) conducted any marketing or advertising.

14.     In connection with my work for Seawind relative to the Resorts, I travel to Jamaica to conduct business.

15.     I have never traveled to Massachusetts in my role as a Seawind executive, including in connection with the Resorts, nor have I been there in my personal life.

16.     In late 2006, Seawind commenced planning for construction of the Resorts.

17.     I acted as the Project Manager in charge of the construction of the Resorts from 2006 through 2010.

18.     Once construction was complete, AM Management Jamaica Resorts Limited ("AM Jamaica") took over day-to-day management of the Resorts.

19.     In April 2009, Copia, through its General Manager Darryl Wehmeyer ("Wehmeyer"), began negotiations with Seawind and AM Jamaica to provide internet and wireless services at the Resorts, which were under construction at the time.

2

20.     I was involved with those negotiations, but I do not recall ever meeting Wehmeyer in person or communicating directly with him.

21.     At the time, I understood that Copia already provided internet and wireless services to other hotels and resorts in Jamaica.

22.     I further understood that Copia maintained an office and several employees in Jamaica to handle the services it provided to hotels and resorts.

23.     I am aware that several meetings took place in Jamaica between Copia, AM Jamaica and Seawind from April to June 2009 to negotiate the terms of a contract between the parties for internet and wireless services (the "Contract").

24.     Copia sent a draft of the Contract to Seawind and AM Jamaica employees in Jamaica to review during the negotiations.

25.     Ultimately, Seawind and Copia memorialized the terms of the Contract through a written agreement dated June 29, 2009, which was first drafted by Copia.

26.     I am aware that Seawind requested and Copia performed the Contract execution in Jamaica.

27.     I am not aware of any Seawind employees, agents or representatives traveling to Massachusetts during the negotiations of the Contract.

28.     I understand that all communications from Seawind employees, agents or representatives during the negotiation of the Contract originated from outside of Massachusetts.

29.     During the Contract negotiations, Copia sent Seawind invoices on Copia letterhead, which provided a Jamaican address.  As such, I understood that Copia had an office in Jamaica.

30.     By April 1, 2010, the Resorts were open for business.

3

31.     Based upon the communications between the parties, I understood that, under the Contract, Copia would provide maintenance and service by Copia employees based in Jamaica or by service visits of Copia employees to Jamaica.

32.     This understanding proved to be true, as throughout its performance of the Contract, several Copia employees were available on-site at the Resorts daily to assist with any maintenance or performance issues.

33.     Indeed, Copia maintained an office at the Resorts' Business Center, where its employees were stationed.

34.     At no point during the performance of the Contract did any Seawind employees, agents or representatives travel to Massachusetts.

35.     All communications from Seawind employees, agents or representatives regarding Copia's performance under the Contract originated from outside of Massachusetts, and mostly, from Jamaica.

36.     I understand that no Seawind employees involved in the Contract negotiations, Contract execution, and/or relationship with Copia live in the United States.

37.     Relevant Seawind documents associated with the Contract negotiations, Contract execution, and/or relationship with Copia are maintained either on-site at the Resorts, or via servers maintained in Jamaica or outside of the United States.


Signed under the penalties of perjury this 15 day of October 2014.

_____
Salvador Luque


Subscribed to and sworn this ___ day of October, 2014
_____ County, ss.

By: _____

4

#32965585_v2

PAPEL EXCLUSIVO PARA DOCUMENTOS NOTARIALES





0,15 €

CA1512774

03/2014



Yo, DON **JUAN LUIS GOMEZ OLIVARES**, Notario de Marbella, DOY FE: --------------------------------
Que considero legítima las firmas y rúbricas que anteceden de **DON SALVADOR LUQUE GARCIA de nacionalidad española y** con **D.N.I.** de su nacionalidad vigente número **27331659T**. ------------
De forma expresa hago constar yo, el notario, que en relación al presente documento, se ha autorizado por mí, notario infrascrito, acta de las previstas en el artículo 207, 2º del Reglamento Notarial. ---------------------------------------

Marbella, quince de Octubre de dos mil catorce
. ---------------------------------------------

ANOTADO EN EL LIBRO INDICADOR
CON EL NÚMERO  894

