UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
COPIA COMMUNICATIONS, LLC,              )
                                         )
               Plaintiff,              )
                                         )
     vs.                               )   Civil Action No. 1:14-cv-13056-LTS
                                         )
AMRESORTS, L.P., a Pennsylvania Limited )
Partnership and successor-in-interest to AM )
Resorts, LLC, and SEAWIND KEY           )
INVESTMENTS LIMITED, a Jamaican         )
Corporation,                             )
                                         )
               Defendants.             )
_____

**DEFENDANT AMRESORTS, L.P.'S MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND FORUM NON CONVENIENS**

Defendant AMResorts, L.P. ("AMResorts") respectfully submits this memorandum in support of its Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens. For the reasons that follow, the Court should grant AMResorts' motion.

**I.    PRELIMINARY STATEMENT**

Plaintiff, Copia Communications LLC ("Plaintiff"), asserts claims against AMResorts for breach of contract and associated torts arising out of an agreement between Plaintiff and co-defendant Seawind Key Investments Limited ("Seawind"), a Jamaican company, for the provision of internet services in Jamaica at Seawind's Jamaican hotels. Plaintiff has not, however, alleged sufficient specific facts to support personal jurisdiction over AMResorts

Plaintiff includes no specific facts that, if true, would support this Court exercising *general* jurisdiction over AMResorts. AMResorts is a Pennsylvania limited partnership, with its headquarters and principal place of business in Pennsylvania. It is in the business of managing

different luxury hotel brands. It has never applied for a license, nor sought to do business in Massachusetts. It has no employees, does not own any real or personal property, maintain an office, maintain any bank accounts, pay taxes, nor direct targeted advertising in or toward Massachusetts. In fact, the only allegation regarding *any* contact AMResorts has with Massachusetts is the conclusory statement that "Defendants" collectively somehow "market and advertise their Secrets Resorts brand in the Commonwealth and conduct their tourism business with Massachusetts residents." Plaintiffs' citation to AMResorts' website that permits travelers to view the resorts operated under the various AMResorts brands is an insufficient contact with the Commonwealth for AMResorts to be deemed subject to personal jurisdiction in this case.

Plaintiff fares no better in making allegations of *specific* jurisdiction against AMResorts. Although the claims that Plaintiff asserts relate to alleged improper termination of the services contract related to the provision of Internet services *in Jamaica* to the owner of the Jamaican hotels, Plaintiff does not (and cannot) allege that AMResorts had *any* contractual relationship with Plaintiff, much less that AMResorts had a contractual relationship with Plaintiff regarding the provision of services in Massachusetts. The most that Plaintiff can assert as far as specific allegations concerning AMResorts is that: (1) AMResorts provided management assistance services for the relevant hotels for Seawind *in Jamaica*; (2) in that role, AMResorts was purportedly involved in some of the contract negotiations that took place *in Jamaica*; and (3) AMResorts sent communications, on behalf of Seawind, to Plaintiff regarding the services provided by Plaintiff to Seawind *in Jamaica*. None of these allegations, even if true, make it foreseeable that AMResorts would be haled into court in Massachusetts.

This is a dispute between two businesses (Plaintiff and Seawind) pursuant to the Internet and Business Centre Solutions and Service Agreement (the "Plaintiff/Seawind Contract"). The

Plaintiff/Seawind Contract obligated Plaintiff to install certain Internet services equipment at Seawind's hotels in Montego Bay, Jamaica for use by the hotels' guests.  The entire relationship between Plaintiff and Seawind, including the alleged discussions between Plaintiff and AMResorts that are referenced in the Complaint, was formed in and centered on work to be performed in Jamaica.  The form Plaintiff/Seawind Contract *that was drafted by Plaintiff* calls for the application of Jamaican law and agrees to Jamaica as the non-exclusive forum.  The contract was negotiated in Jamaica; the contract was executed in Jamaica; the work that is the subject of the contract was performed in Jamaica; the evidence, including the videotape evidence of Plaintiff removing its equipment from Seawind, is onsite in Jamaica; and the witnesses are in Jamaica.  Finally, Plaintiff's business is centered in Jamaica.  Plaintiff focuses on the sale and installation of Internet services for hotels *in Jamaica*, and it touts "local experience" on its website—advertising that it has operated in Jamaica for over ten years and that its service is backed by a team of technicians resident in Jamaica.  Accordingly, there is no question that Plaintiff itself could have and did foresee having any disputes regarding the Plaintiff/Seawind Contract being resolved in Jamaica.  Therefore, even if the Court finds it has jurisdiction over AMResorts, the Court should dismiss the action under the doctrine of forum non conveniens because the relevant events occurred in Jamaica and are governed by Jamaican law.

      The only reason AMResorts is included in this Complaint is because Plaintiff otherwise would be left with a Jamaican defendant with *no* connection whatsoever to the *United States*.  But the law does not permit Plaintiff, through the mere and conclusory assertion of alter ego, to impute Seawind's contacts as the contracting party to AMResorts.  Seawind and AMResorts are entirely separate entities (as are AMResorts and its affiliates), with separate boards of directors, and separate books and records.  If AMResorts is the alter ego of Seawind, then every

management company in flagship hotel brands run the risk of courts disregarding their corporate form. In making this conclusory argument, Plaintiff overreaches. The Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or under the doctrine of forum non conveniens.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     AMResorts Has No Contacts With Either Massachusetts or Copia.

AMResorts is a Pennsylvania limited partnership. (Keleshian Decl.[1] ¶ 3.) AMResorts is one company in a group that provides brand licensing, hotel management assistance services, and online distribution and sales services for all-inclusive hotels located in the Caribbean and Central America. (*Id.*) AMResorts has no employees in Massachusetts; it has no property in Massachusetts; it has no office in Massachusetts; and it is not registered to do business in Massachusetts. (*Id.* at ¶¶ 5-8.) Nor is the business of AMResorts specifically targeted at residents of Massachusetts—rather, AMResorts operates a business that seeks consumers all over the world to come stay at the resorts bearing its branding. (*Id.* at ¶ 4.)

An AMResorts affiliate, AM Management Jamaica Resorts Limited ("AM Jamaica"), which is a company formed under the laws of Jamaica and which operates in Jamaica, entered into a Hotel Management Agreement with Seawind.[2] Seawind is also a Jamaican company. Pursuant to the Hotel Management Agreement, AM Jamaica would provide management assistance services for Seawind's two Jamaican properties for the benefit of Seawind, which

---

[1] The Keleshian Declaration is attached as Exhibit A to AMResorts' motion to dismiss. All other affidavits cited herein are attached to Seawind's motion to dismiss.

[2] Both AMResorts and AM Jamaica are part of the Apple Leisure Group®; the parent company of AMResorts' limited partner is also the parent company of AM Jamaica. (Keleshian Decl. ¶¶ 3, 12.)

4

remained the owner of the properties.[3]  (*Id.* at ¶ 14; Compl. Ex. H.)

### B. The Plaintiff/Seawind Contract Involved the Provision of Equipment and Services in Jamaica.

Plaintiff's business is the provision of Internet services to resorts on the island of Jamaica.  (Aff. of Courtney Gribbon ("Gribbon Aff.") ¶¶ 4-7.)  Plaintiff's website advertises that it has local experience, having operated in Jamaica for over ten years.  (*Id.*)  The website also states that Plaintiff's service is backed by a team of technicians resident in Jamaica and that it can staff on-site business centers with its own employees.  (*Id.*)

Recognizing that Seawind was building two new resorts in Jamaica, Plaintiff approached Seawind with an offer to install the Internet services infrastructure in Seawind's resort.  (Aff. of Michael McMorris ("McMorris Aff.") ¶¶ 11-12.)  To discuss the terms of the agreement, the initial draft of which was provided by Plaintiff, a meeting occurred in Jamaica.  The meeting was attended by representatives from Plaintiff, Seawind, and, because AM Jamaica would be managing the resorts, AM Management employees.  (Aff. of Manuel Garcia ("Garcia Aff.") ¶¶ 6-7; Aff. of Salvador Luque Garcia ("Luque Aff.") ¶¶ 23-24.)  There is no allegation that any employee of AMResorts participated in the negotiation of the Plaintiff/Seawind Contract in any way.  (*See generally* Compl.)  Ultimately, Seawind agreed to the terms of the Plaintiff/Seawind Contract.  Pursuant to the Plaintiff/Seawind Contract, Plaintiff agreed to provide services to Seawind in Jamaica—specifically, Internet services that guests of the Jamaican resorts would use, either in their rooms or in a business center.  (Compl. at Ex. E.)

Neither AMResorts nor AM Jamaica are signatories to the Plaintiff/Seawind Contract,

---

[3] The employees performing functions on behalf of AM Jamaica are employed by a separate AMResorts affiliate, AMR Resort Management, LLC ("AM Management"), which is a company organized under the laws of Nevis. (Keleshian Decl. ¶ 11.)  AM Management is also an indirect subsidiary of Apple Leisure Group®, and the parent company of AMResorts' limited partner is also the parent company of AM Management.  (*Id.* at ¶ 3.)  None of the persons referenced in the Complaint are AMResorts employees.  (*Id.* at ¶ 13.)  For example, Emilio Huhn is a Seawind employee (Aff. of Emilio Huhn ("Huhn Aff."), at ¶ 1).

nor are they mentioned anywhere in the agreement.  (Compl. Ex. E.)  And, as evidenced by the Exhibits attached to the Complaint, the contractual relationship was always expressed as one between Plaintiff and Seawind, with no reference whatsoever to AMResorts.  (Compl. Exs. A, E, F, H, J, L, M (all listing *Seawind* as Plaintiff's customer).)  Services were performed by Plaintiff for and on behalf of Seawind, and all payments were between Plaintiff and Seawind.  (*See* Compl. Exs. E, G.)  Plaintiff's conclusory alter ego allegations are without merit.  Indeed, an email cited by Plaintiff in the Complaint actually confirms the independence of Seawind; that email confirmed that Seawind "is the owner of the hotel and is the company to which you have been contracted," and that "we wish to remind you that all communication, decisions or changes must be done and approved by [Seawind]," and that "[a]ny decision or changes made otherwise will have no validity."  (Compl. Ex. H.)[4]

In an attempt to assert jurisdiction over AMResorts, Plaintiff also plays fast and loose with other facts, misstating a number of pertinent allegations, including many instances in which one of Plaintiff's allegation is contradicted by other allegations in the Complaint or by the documents attached as Exhibits to the Complaint.  The table below sets forth some examples:

| Copia's Allegation | Corrected Facts |
|---|---|
| Emilio Huhn, who allegedly wrongfully terminated the Plaintiff/Seawind Contract, is alleged to be an employee of AMResorts. (Compl. ¶ 26.) | Emilio Huhn is an employee of *Seawind*, not AMResorts. The letter sent by Mr. Huhn to Copia terminating the contract is from Seawind and on Seawind letterhead. (Compl. ¶ J.; *see also* Keleshian Decl. ¶ 13.) |
| Pedro Morell and Manuel Carbajo are alleged to be employees of AMResorts, who allegedly participate in negotiations in Jamaica. (Compl. ¶ 11.) | Pedro Morell and Manuel Carbajo are not and have never been employees of AMResorts.  (Keleshian Decl. ¶ 13.) |
| "Upon information and belief, | The inaccuracy of this statement is demonstrated by |

---

[4] Moreover, Exhibit F is an email request from Seawind to Plaintiff requesting that Plaintiff's CEO come to the Seawind office in Jamaica to sign the contract; there is no AMResorts involvement in that process whatsoever. (Compl. Ex. F.)

6

| | |
|---|---|
| Seawind was not directly involved in the contract negotiations with the Plaintiff until on or after June 14, 2009." (Compl. ¶ 15.) | Plaintiff's own Complaint. Plaintiff attaches as Exhibit A, an email from April 21, 2009, which is an email from Plaintiff to Mr. Garcia, *a Seawind employee*, including proposed terms and referencing the scheduled meeting with Seawind (through Mr. Garcia) on that day. |
| "The Plaintiff contracted with the Defendants . . . " (Compl. ¶ 42; *see also id.* ¶¶ 7, 11, 17-22.) | Plaintiff contracted only with Seawind. Seawind is the only signatory to the Plaintiff/Seawind Contract. (Compl. Ex. E.) During the term of the contract, Plaintiff only received payment from and sought payment from Seawind. (Compl. Exs. A, L, M (invoices to Seawind); Compl. Ex. G (discussing Seawind's payment to Plaintiff).) |
| "Plaintiff received payment under the Contract from Defendant AM Resorts and inquired as to the application of such payment." (Compl. ¶ 25.) | The payment came from Seawind. (Compl. Ex. G.) As evidenced in the email chain, Seawind made the payment and was the entity with knowledge of the reason for the payment. (*Id.*) |

## III. ARGUMENT

### A. The Court Lacks Personal Jurisdiction Over AMResorts.

#### 1. *Plaintiff's Burden of Establishing Personal Jurisdiction*

In order to exercise personal jurisdiction over a defendant, the Court must be satisfied that the exercise of jurisdiction is authorized by the Massachusetts long-arm statute[5] and consistent with the due process requirements of the United States Constitution. *See, e.g.*, *Media3 Techs., LLC v. CableSouth Media III, LLC*, -- F. Supp. 3d --, No. Civ. 13-12558-FDS, 2014 WL 1725768, at *2 (D. Mass. Mar. 12, 2014) (citing *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 712 (1st Cir. 1996)).

Pursuant to the United States Constitution, "[a] district court may exercise authority over a defendant by virtue of either general or specific jurisdiction. General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant

---

[5] While Plaintiff must prove that jurisdiction is provided by the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, the analysis under the long-arm statute and the Constitution are the same because Massachusetts interprets the long-arm statute to the limits allowed by the Constitution. *See Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008).

has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 618 (1st Cir. 2001) (internal quotations and citations omitted). Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities.

The plaintiff has the burden of proof to show the existence of personal jurisdiction over the defendant when opposing a motion to dismiss under Rule 12(b)(2). *See Media3 Techs.*, 2014 WL 1725768, at *2 (citing *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002)). To succeed, the plaintiff must make a prima facie showing, based on specific facts in the record,[6] to support a finding of jurisdiction. *See Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 31 (1st Cir. 2010). The Court must also "add to the mix facts put forward by the defendants, to the extent they are uncontradicted." *Id.* (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998)).

Here, Plaintiff cannot meet its burden to demonstrate the satisfaction of either general or specific jurisdiction over AMResorts. The only contacts that AMResorts allegedly has with Massachusetts are that AMResorts operates a website highlighting the flagship properties that anyone could view, including Massachusetts residents. Those contacts do not relate to or form the nexus of the commercial dispute, nor do they rise to the level of continuous and systematic activity such that AMResorts is at home in Massachusetts.

     *1.* ***Plaintiff Cannot Establish That the Court Has General Jurisdiction Over AMResorts.***

Due to the paucity of AMResorts' contacts with Massachusetts, even those unrelated to the Copia/Seawind Contract and this dispute, there is no general jurisdiction over AMResorts.

---

[6] The plaintiff "***cannot rest upon the pleadings*** but must adduce evidence of specific facts" to support an exercise of personal jurisdiction. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 284 F. Supp. 2d 204, 211 (D. Mass. 2003) (emphasis added).

A court is precluded from asserting general jurisdiction unless the defendant's "affiliations with the State are so continuous and systematic *as to render it essentially at home* in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (emphasis added). Under First Circuit law, to establish general jurisdiction, Plaintiff must show that: "(1) the defendant must have sufficient contacts with the forum state, (2) those contacts must be purposeful, and (3) the exercise of jurisdiction must be reasonable under the circumstances." *Cossaboon*, 600 F.3d at 32. Here, none of these factors are met.[7]

In order to satisfy the first prong, Plaintiff must show that AMResorts "engages in the continuous and systematic pursuit of general business activities in the forum state," *Cossaboon*, 600 F.3d at 32 (internal quotation omitted), such that the business is essentially "at home" in the forum. *Micheli v. Techtronic Inds., Co.*, Civ A. No. 11-10503-NMG, 2012 WL 6087383, at *13 (D. Mass. Mar. 1, 2013) (Sorokin, J.) (citing *Goodyear*, 131 S. Ct. at 2853). "Although a showing of 'minimum contacts' is sufficient to establish specific jurisdiction, the standard for establishing general jurisdiction is 'considerably more stringent.'" *Cossaboon*, 600 F.3d at 25; *Eon Corp. v. AT&T Mobility, LLC*, 879 F. Supp. 2d 194, 201-02 (D.P.R. 2012) (noting that the stringent standard for general jurisdiction over a non-resident is "rarely met").

Here, AMResorts' contacts are so scant that there is no way that it could be said to have continuous and systematic business in Massachusetts such that it is at home here. The Supreme Court has stated that the paradigm forum for general jurisdiction over a corporation is its place of incorporation or principal place of business, *Goodyear*, 131 S. Ct. at 2853-54, and that "only in an 'exceptional case' may a corporation be deemed at home and subject to general jurisdiction in

---

[7] The second and third prongs are similar to the analysis with respect to specific jurisdiction, and for the same reasons stated below, indicate that the Court cannot exercise personal jurisdiction over AMResorts.

a state other than where it is incorporated or has its principal place of business." *Bulwer v. Mass. Coll. of Pharmacy & Health Scis.*, Civ. No. 1:13-cv-521, 2014 WL 3818689, at *5 (D.N.H. Aug. 4, 2014) (citing *Daimler*, 134 S. Ct. at 761 n.19) (holding that college satellite campus located in New Hampshire was insufficient for New Hampshire to maintain general jurisdiction); *see also Eon*, 879 F. Supp. 2d at 203-07 (contracts with approximately 440,000 residents and website allowing residents to order service from AT&T insufficient to establish general jurisdiction). This is not such an exceptional case. Because AMResorts is neither incorporated nor has its principal place of business in Massachusetts, general jurisdiction is not proper.

Plaintiff's allegation that AMResorts operates a website that Massachusetts residents can access is insufficient to provide the "exceptional" facts necessary for general jurisdiction. *See Daimler AG*, 134 S. Ct. at 761 n.19. Even before *Daimler* increased the threshold for establishing general jurisdiction, courts were hesitant to base general jurisdiction on advertising or websites available in the forum. As noted by the First Circuit, "even extensive advertising contacts with the forum state [are] inadequate to permit an assertion of general jurisdiction." *Cossaboon*, 600 F.3d at 34. This is particularly true where a defendant's website does not target residents of the forum in particular and is instead accessible by and targeted to persons all over the country (or the world). *Id.* at 35. In other lawsuits against hotel brands, courts have consistently held that operating a "commercial website permitting reservations is insufficient to confer general jurisdiction over the site operator." *Orazi v. Hilton Hotels Corp.*, Civ. A. No. 09-cv-5959, 2010 WL 4751728, at *6 (E.D. Pa. Nov. 22, 2010).[8] Where, as here, AMResorts'

---

[8] *See also Arriaga v. Imperial Palace, Inc.*, 252 F. Supp. 2d 380, 385-86 (S.D. Tex. 2003) ("Imperial Palace's web site is accessible nationwide, but requires an affirmative action by those accessing it. Imperial Palace takes no deliberate action in Texas: it simply makes its web site available nationwide."); *Dagesse v. Plant Hotel N.V.*, 113 F. Supp. 2d 211, 223-24 (D.N.H. 2000) ("Even with the addition of two new jurisdictional facts—the television advertisements and the internet web site—Marriott International's forum-related contacts, taken in toto, do not constitute deliberate, continuous and systematic activity in New Hampshire.").

website does not target Massachusetts residents (Keleshian Decl. ¶ 4), it cannot be used to support general jurisdiction. *See id.* Because AMResorts is not at home in Massachusetts, Plaintiff cannot establish general jurisdiction in this case.

### 2. *Plaintiff Cannot Establish That the Court Has Specific Jurisdiction Over AMResorts.*

In order to show that the Court has specific jurisdiction over AMResorts, Plaintiff must demonstrate that: (1) the claim underlying the litigation directly arises out of or relates to the AMResorts' forum-state contacts; (2) AMResorts' forum-state contacts constitute purposeful availment of the privileges of doing business in Massachusetts; and (3) the exercise of jurisdiction is reasonable in light of traditional notions of fair play and substantial justice. *See Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005). Plaintiff cannot meet its burden. Plaintiff's claim has no relation to the single contact AMResorts allegedly has with Massachusetts (its website), and AMResorts has not purposefully availed itself of the privileges of doing business in Massachusetts.

#### (a) **Plaintiff's Claims Do Not Relate to the *De Minimis* Contact AMResorts Has With Massachusetts.**

In order to establish the first prong of the constitutional analysis, Plaintiff must show that the "cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008) (quoting *Harlow*, 432 F.3d at 57). Where, as here, the contract and tort claims are connected, Plaintiff must show that the "defendant's activity in the forum state was instrumental either in the formation of the contract or its breach." *Id.* (internal quotation omitted). Plaintiff cannot meet this burden.

Plaintiff asserts that Seawind breached the Plaintiff/Seawind Contract by improperly terminating the contract and that AMResorts has taken unspecified actions that contributed to that breach. However, AMResorts' only real contact with Massachusetts—the operation of a

11

website highlighting its branded properties—is for travelers throughout the world looking to stay at a luxury property; it has no relation to the Plaintiff/Seawind Contract or the dispute, and therefore has no relevance to the specific jurisdiction analysis.

Even if AMResorts were a signatory to the Plaintiff/Seawind Contract or it had a debt due to a party in Massachusetts, without more, these contacts would be insufficient to demonstrate specific jurisdiction because the contract was negotiated and executed in Jamaica and the situs of the work to be performed under the contract was Jamaica. *See, e.g.*, *Adams v. Adams*, 601 F.3d 1, 6 (1st Cir. 2010) (no relation to Massachusetts where specific terms were not "formalized and entered into" in Massachusetts); *Phillips*, 530 F.3d at 27 (contract and tort claims have no relation to Massachusetts where no negotiations took place in Massachusetts); *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 113 (1st Cir. 1997) (no specific jurisdiction where work to be performed was outside of Massachusetts); *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, Civ. A. No. 13-11788-DJC, 2014 WL 815189, at *3-4 (D. Mass. Mar. 3, 2014) (collecting cases).

The *Lyle Richards* decision is instructive. That case involved a contract for a Massachusetts resident to be a purchasing agent in China and Taiwan. *Id.* The First Circuit held that where the contract did not involve undertaking any actions in Massachusetts, but instead involved performing duties abroad, the fact that the plaintiff chose to undertake administrative tasks in Massachusetts was insufficient to allow the court to exercise personal jurisdiction. *Id.* Even less relation to Massachusetts exists in this case. Neither AMResorts nor AM Jamaica are in contractual relations with Plaintiff, and neither owe a debt to a Massachusetts resident. (Compl. Ex. E.) Instead, AM Jamaica, through employees of AM Management, managed Seawind's hotels in Jamaica, which included assisting in the negotiations of the

Plaintiff/Seawind Contract and sporadic interaction with Plaintiff on-site at the hotels in Jamaica. (*See* Keleshian Decl. ¶ 14; Luque Aff. ¶ 19.)  The in-person meetings regarding negotiation of the contract occurred in Jamaica; the contract did not involve travel to Massachusetts by anyone affiliated with AMResorts; and Plaintiff executed the Plaintiff/Seawind Contract in Jamaica.[9] *See Lyle Richards*, 132 F.3d at 113; *Rolivia, Inc. v. Emporium Nostrum, Inc.*, No. 13-ADMS-10013, 2013 WL 6034920, at *3 (Mass. App. Ct. Nov. 8, 2013) (collecting cases noting that purchase and payment by mail to Massachusetts insufficient to establish personal jurisdiction).

The only other contact related to this dispute that arguably could tie AMResorts to Massachusetts is that representatives of a non-U.S. affiliate of AMResorts sent email messages to Plaintiff, which is a company formed under the laws of Massachusetts.  This contact does not create jurisdiction for several reasons. Initially, the contacts of AM Management or AM Jamaica cannot be imputed to AMResorts, as they are separate companies.[10]  (Keleshian Decl. ¶¶ 3, 11-12.)  But even if such contacts could be imputed, mere email communications that may or may not have been read in Massachusetts (depending on whether Plaintiff's CEO was, at the time, in Massachusetts or Jamaica) are insufficient to demonstrate specific jurisdiction in Massachusetts. *See Adamchek v. Costco Wholesale Corp.*, No. 1:08-cv-10182, 2008 WL 7536878, at *5 (D. Mass. June 11, 2008) (finding email communications insufficient for jurisdiction).

---

[9] *See* Compl. Ex. C (describing meeting with Seawind in Jamaica), Compl. Ex. F (requesting Plaintiff come to Seawind's offices to sign the Plaintiff/Seawind Contract); *see also* McMorris Aff. ¶¶ 12-13, 16-17; Garcia Aff. ¶¶ 7, 9; Luque Aff. ¶¶ 23-29.

[10] Although Plaintiff twice makes the conclusory allegation that Seawind is an alter ego of AMResorts, there are no factual allegations to support that conclusion.  (*See* Compl. ¶¶ 13, 39.)  Moreover, Plaintiff does not even allege that AMResorts and AM Jamaica or AM Management are alter egos, opting instead to incorrectly state that AM Management employees are AMResorts employees. (*See generally* Compl.)  Piercing the corporate veil of these separate entities would be wholly improper here, as there is no allegation of fact, much less proof, of pervasive control of one entity over the other, nor is there intermingling of the activities with a substantial disregard for the separate nature. *See, e.g.*, *Bridge Street Auto., Inc. v. Green Valley Oil, LLC*, 985 F. Supp. 2d 96, 113 (D. Mass. 2013) ("Although the record establishes that there was a close relationship between ARFA and Green Valley, and that certain individuals performed work for both companies, it does not establish that there was any common ownership or that ARFA controlled, much less pervasively controlled, any of Green Valley's operations.").

In short, this is not a case where "the specific terms of the contract were 'formalized and entered into' in the forum state," *Adams*, 601 F.3d at 6, nor is it a case where the actions of the defendant in the forum state were "instrumental either in the formation of the contract or its breach." *Phillips*, 530 F.3d at 27. Rather, this is a case where one company happens to be formed in Massachusetts and may choose to maintain some administrative function there, and all other aspects of the relationship, including the performance of the contract and any alleged breach, would have occurred in Jamaica.

### (b) AMResorts Did Not Purposefully Avail Itself of the Benefits of Doing Business In Massachusetts.

The second prong of the constitutional analysis—that AMResorts purposefully availed itself of the benefits of doing business in Massachusetts—"is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *Adams*, 601 F.3d at 7; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (jurisdiction is only proper when "the contacts proximately result from actions by the defendant himself . . ."). AMResorts did not purposefully avail itself of the benefit of doing business in Massachusetts with respect to this dispute. In particular, AMResorts does not interact with the hotel management operations (in this case carried out by AM Jamaica) and thus had no contact with Plaintiff, much less contact directed at Massachusetts. As a result, AMResorts could not reasonably anticipate being haled into court in Massachusetts based on its contacts. *See id.*

And again, while any contacts that AM Management had with Massachusetts should not be imputed to AMResorts, even those contacts fall short. AM Management was not the beneficiary of Plaintiff's services, nor was it receiving or paying money with respect to the Plaintiff/Seawind Contract. (Compl. Ex. E.) To the contrary, it was Plaintiff that affirmatively

14

reached out and solicited Seawind in Jamaica (McMorris Aff. ¶¶ 11-12); therefore, AM Management cannot be said to have reached into the Massachusetts forum to create a relationship. *See, e.g.*, *Adams*, 601 F.3d at 7; *OneBeacon Am. Ins. Co. v. Argonaut Ins. Co.*, No. 09-5085-BLS, 2011 WL 6013018, at *4 (Mass. Super. Ct. Nov. 9, 2011) (granting motion to dismiss for lack of specific jurisdiction where defendant did not initiate contact with plaintiff).

In addition, the Plaintiff/Seawind Contract provides for the application of Jamaican law and a non-exclusive Jamaican forum. (Compl. Ex. E at § 17.0.) Both of these factors indicate that even Seawind understood that the nexus of the relationship would be Jamaica. *See Daniels Agrosciences, LLC v. Ball DPF, LLC*, CA 13-268-ML, 2013 WL 5310208 (D.R.I. Sept. 20, 2013) (personal jurisdiction in Rhode Island "undercut by . . . Texas choice of law and forum clauses").

Finally, Plaintiff's conduct demonstrates an intent that it be haled into Jamaican court. According to its website, Plaintiff advertises that its founder moved to Jamaica in 2000 and formed Plaintiff in Kingston, Jamaica in 2001. (Gribbon Aff. ¶¶ 4-7.) Plaintiff's list of advertised clients consists almost exclusively of Jamaican hotels, and Plaintiff touts that it maintains offices in Kingston, Jamaica. (*Id.*) Given Plaintiff's strong Jamaican ties, it is not foreseeable that AMResorts, through AM Management, would be haled into court in Massachusetts for the actions AM Management took in Jamaica. *See Adamchek*, 2008 WL 7536878, at *5 ("Litigation in Massachusetts is not foreseeable over a contract negotiated and executed in Florida by parties in Florida to sell a residence located in Florida."). In sum, this is a Jamaican dispute concerning events that took place in Jamaica, with no evidence that AM Management, let alone AMResorts, was attempting to avail itself in any way of the privilege of doing business in Massachusetts. Thus, there can be no personal jurisdiction over AMResorts.

     **(c)  Exercising Jurisdiction Is Unreasonable in Light of Traditional**

**Notions of Fair Play and Substantial Justice.**

Finally, specific jurisdiction is lacking because it is unreasonable and in contravention of the "gestalt" factors to exercise jurisdiction over AMResorts.[11] Here, AMResorts would have a high burden of appearing, as the persons with knowledge of the relevant facts reside in Jamaica. (Aff. of Mary-Angela Robertson ("Robertson Aff.") ¶ 12.) Moreover, Massachusetts has only limited interest in the resolution of this dispute, as the Plaintiff/Seawind Contract that was drafted by Plaintiff is governed by Jamaican, not Massachusetts', law; calls for the non-exclusive jurisdiction of Jamaica as the forum; was negotiated in Jamaica; was executed in Jamaica, and envisions performance in Jamaica. (*See* Compl. Ex. E; Luque Aff. ¶¶ 23-29.) Therefore, the "gestalt" factors also do not permit a finding of specific jurisdiction over AMResorts.

**B.    Alternatively, the Court Should Dismiss This Action Pursuant to the Doctrine of Forum Non Conveniens.**

Even if this Court exercises personal jurisdiction over AMResorts (and it should not), this case should be dismissed pursuant to the doctrine of forum non conveniens because "an adequate alternative forum exists . . . considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." *Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97, 101 (1st Cir. 2009) (quoting *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8 (1st Cir. 2000)).

*1.    Jamaican Courts Are an Adequate Alternative Forum.*

The first prong of the forum non conveniens test is that there be an adequate alternative forum. *See Interface Partners*, 575 F.3d at 101. This test is not a difficult hurdle to cross—it is satisfied if "the alternative forum addresses the types of claims that the plaintiff has brought and

---

[11] The "gestalt" factors are (1) the defendants' burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interest of all sovereigns in promoting substantive social policies." *Nowak*, 94 F.3d at 717. "The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." *Id.* Because the minimum contacts analysis here is not close, even if the "gestalt" factors tipped in Copia's favor, they would not permit the Court to find jurisdiction. *Adams*, 601 F.3d at 8.

the defendant is amenable to service of process there." *Id.*

Here, there should be no dispute that Jamaica represents an adequate and available forum. Several courts have previously concluded that Jamaica is an adequate alternative forum for purposes of the forum non conveniens calculus. *See, e.g.*, *Guimond v. Wyndham Hotels & Resorts*, No. 95 Civ. 0428, 1996 WL 281959, at *2-3 (S.D.N.Y. May 29, 1996) (finding Jamaica to be an adequate alternative forum); *Seales v. Panamanian Aviation Co.*, 356 F. App'x 461, 463-64 (2d Cir. 2009) (same). Moreover, both AM Jamaica[12] and Seawind are subject to jurisdiction in Jamaica, as they transacted business in Jamaica related to this dispute. (Robertson Aff. ¶ 10.) Additionally, Seawind and Plaintiff agreed to submit "to the non-exclusive jurisdiction of the Courts of Jamaica." (Compl. Ex. E.) Finally, Jamaican law governs the Plaintiff/Seawind Contract and provides for similar claims for relief and remedies as those stated and requested in this Complaint. (Robertson Aff. ¶¶ 6-8.) Therefore, the first prong of the forum non conveniens test is satisfied.

### 2. *The Public and Private Interest Factors Weigh in Favor of a Jamaican Forum.*

The second prong of a forum non conveniens analysis is whether the public and private interest factors favor dismissal. *See Interface Partners*, 575 F.3d at 101. The public and private factors include (1) the relative ease of access to sources of proof; (2) the familiarity of the court with applicable law; and (3) the interest in deciding local controversies locally. *Id.* Each of these factors favors a Jamaican forum.

The first factor is the relative ease of access to sources of proof. Here, almost all of the relevant witnesses and documents are located in Jamaica. (Robertson Aff. ¶ 12.) Even

---

[12] It appears that Plaintiff has brought suit against the wrong party. The employees referenced in the Complaint as interacting with Plaintiff are not employed by AMResorts, and relationship is governed by a contract between Seawind and AM Jamaica.

Plaintiff's witnesses and documents are likely in Jamaica, as Plaintiff's entire business is developing Internet solutions for Jamaican hotels. Plaintiff even advertises that it has a "team of technicians resident in Jamaica" and "offices in Runaway Bay and Montego Bay." (Gribbon Aff. ¶¶ 4-7.) Moreover, the negotiation, execution, performance, and the alleged improper termination of the Plaintiff/Seawind Contract occurred in Jamaica, as did Plaintiff's actions to remove equipment from the site of performance following termination. (Luque Aff. ¶¶ 23-29; Huhn Aff. ¶ 8-12.) Where the events related to any alleged misconduct occurred in Jamaica and most of the witnesses will be in Jamaica, the first factor weighs strongly in favor of a Jamaican forum. *See, e.g.*, *Interface Partners*, 575 F.3d at 103-04 (citing *Howe v. Goldcorp Invs. Ltd.*, 946 F.2d 944, 951 (1st Cir. 1991)).[13]

The second factor is the familiarity of the Court with local law. Here, the Plaintiff/Seawind Contract specifically chooses Jamaican law to govern the contract. (Compl. Ex. E at § 17.) Because there should be no dispute that Jamaican law will apply, this factor weighs in favor of a Jamaican forum. *See, e.g.*, *Interface Partners*, 575 F.3d at 106 (citing *Howe*, 946 F.2d at 953).

The final factor is the interest in deciding local controversies locally. This factor points very strongly in favor of Jamaican courts deciding this issues, given the strong ties that each party has with Jamaica. The contract was entered into in Jamaica, was performed in Jamaica for the benefit of a Jamaican company (Seawind), and almost all of Plaintiff's operations are focused on performance in Jamaica for Jamaican clients. (*See* Luque Aff. ¶¶ 23-29; Huhn Aff. ¶ 8-12; Gribbon Aff. ¶¶ 4-7.)

---

[13] Courts also examine the ability to compel witnesses to appear. The only witness in Massachusetts is Plaintiff's CEO, Mr. Wehmeyer. Thus, AMResorts could not compel any witness not under its control to testify in Massachusetts, further militating against jurisdiction.

In decisions involving similar circumstances, courts have granted motions to dismiss. For example, in *Interface*, a company based in Massachusetts filed suit against a former employee and resident of Israel in Massachusetts for breach of contract. *Id.* at 100. Other than the plaintiff-company being based in Massachusetts, the remaining contacts favored Israel as an alternative forum. *Id.* at 104. Most important to that court's analysis was that performance of the contract and the alleged misconduct occurred in Israel. *Id.* at 104-05. Similar results were reached in decisions involving hotels, where the court focused on the location of the witnesses and location of the events causing the injury. *Guimond*, 1996 WL 281959, at *3-5 (granting motion for forum non conveniens where the majority of the witnesses would be in Jamaica, the majority of other evidence would be in Jamaica, and Jamaica had in interest in adjudicating a dispute arising within its borders); *Iragorri*, 203 F.3d at 15-17 (the location of the accident in Colombia and the location of two critical witnesses in Colombia "militated in favor of a trial in Colombia" even considering the travel difficulties and possible danger of trial in Colombia).[14]

Given the overwhelming number of meaningful contacts in Jamaica—including witnesses, documents, site of negotiation and execution, location of performance, site of alleged wrongdoing, location of post-termination events (including Plaintiff's removal of Internet-related equipment)—as well as the convenience of Jamaica for all interested parties, the Court should follow the foregoing decisions and dismiss in favor of a trial in Jamaica.

## IV.   CONCLUSION

Because the Court does not have personal jurisdiction over AMResorts, and, alternatively, because a more appropriate forum for this matter exists in Jamaica, the Court

---

[14] As held by the First Circuit, a "'citizen's forum choice should not be given dispositive weight' and 'dismissal should not be automatically barred when a plaintiff has filed suit in his home forum.'" *Interface Partners*, 575 F.3d at 102 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.23 (1981)). Given the strong Jamaican connection discussed herein, Plaintiff's choice of forum is improper regardless of the level of deference applied by the Court.

should dismiss this matter.

Dated:  October 17, 2014                             Respectfully submitted,


                                          */s/ Jack W. Pirozzolo*
                                        Jack W. Pirozzolo (BBO #564879)
                                        Corey D. Winer (BBO #678410)
                                        SIDLEY AUSTIN LLP
                                        60 State Street, 34th Floor
                                        Boston, Massachusetts 02109
                                        Ph:  (617) 223-0330
                                        jpirozzolo@sidley.com
                                        cwiner@sidley.com

                                        Michelle Hartmann
                                              (*pro hac vice* application forthcoming)
                                        Robert S. Velevis
                                              (*pro hac vice* application forthcoming)
                                        SIDLEY AUSTIN LLP
                                        2001 Ross Avenue, Suite 3600
                                        Dallas, Texas 75201
                                        Ph:  (214) 981-3300
                                        mhartmann@sidley.com
                                        rvelevis@sidley.com

                                        *Attorneys for Defendant AMResorts, L.P.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this day, October 17, 2014, I electronically filed the above Memorandum In Support of Its Motion to Dismiss for Lack of Personal Jurisdiction, Forum Non Conveniens using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

                                        */s/ Jack W. Pirozzolo*
                                        Jack W. Pirozzolo